# BLOOMER *v.* LIBERTY MUTUAL INSURANCE CO.

No. 78–1418.   Argued December 4, 1979—Decided March 3, 1980

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, POWELL, REHNQUIST, and STEVENS, JJ., joined. BLACKMUN, J., filed a dissenting opinion, *post,* p. 88.

*Alan C. Rassner* argued the cause and filed briefs for petitioner.

*Douglas A. Boeckmann* argued the cause and filed a brief for respondent.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.,* a longshoreman is entitled to receive compensation payments from his stevedore for disability or death resulting from an injury occurring on the navigable waters of the United States.

---

*Briefs of *amici curiae* were filed by *Paul S. Edelman, Arthur Abarbanel,* and *Theodore I. Koskoff* for the Association of Trial Lawyers of America; and by *Dennis Lindsay* and *Robert Babcock* for the Master Contracting Stevedore Association of the Pacific Coast, Inc.

If the longshoreman believes that his injuries warrant a recovery in excess of the compensation provided under the Act, he may also bring a negligence action against the owner of the vessel on which the injury occurred. The longshoreman's recovery from the shipowner is subject to the stevedore's lien in the amount of the compensation payment. The question for decision is whether the stevedore's lien must be reduced by a proportionate share of the longshoreman's expenses in obtaining recovery from the shipowner, or whether the stevedore is instead entitled to be reimbursed for the full amount of the compensation payment.

## I

Petitioner William E. Bloomer, Jr., was injured during the course of his employment on board the vessel S. S. *Pacific Breeze*. He received $17,152.83 in compensation from respondent Liberty Mutual Insurance Co., the designated carrier of workers' compensation for petitioner's employer, Connecticut Terminal Co.[1] Thereafter petitioner brought this diversity action against the owner of the vessel. He alleged that the shipowner had negligently created hazardous conditions on board the vessel, that the ship's deck was slippery and dangerous, and that as a result he had fallen and incurred severe injuries.

During settlement negotiations, petitioner's counsel gave respondent notice of the pending action and requested it to reduce its lien by a share of the costs of recovery. That share would be computed as an amount bearing the same ratio to the total cost of recovery as the compensation payments bear to the total recovery. Respondent refused petitioner's request, asserted its right to full reimbursement, and successfully moved to intervene in the action. Soon thereafter petitioner settled with the shipowner for $60,000. He moved for sum-

---

[1] For convenience we shall use the term "stevedore" to refer to both the employer and its insurer.

mary judgment directing that respondent's lien on the recovery be reduced by an amount representing its proportionate share of the expenses of the suit against the shipowner. Petitioner claimed that since the recovery from the shipowner would benefit respondent, equity required that respondent bear a portion of the expenses of obtaining that recovery.

The District Court denied petitioner's motion,[2] and the United States Court of Appeals for the Second Circuit affirmed. *Bloomer* v. *Tong,* 586 F. 2d 908 (1978). The Court of Appeals concluded that a stevedore should not be required to pay a share of the longshoreman's legal expenses in a suit

---

[2] The District Court's distribution was as follows:

| | |
|---|---:|
| Recovery | $60,000.00 |
| less expenses | (202.80) |
| balance for distribution | 59,797.20 |
| less attorney's fee of one-third | (19,932.40) |
| balance | 39,864.80 |
| less lien of respondent | (17,152.83) |
| net to petitioner | 22,711.97 |

Under this distribution scheme, petitioner received a total of $39,864.80 from the stevedore and shipowner, an amount equivalent to the full $60,000 recovery minus expenses.

Petitioner sought to have the fund distributed in the following manner:

| | | |
|---|---:|---:|
| Recovery | | $60,000.00 |
| less expenses | | (202.80) |
| balance for distribution | | 59,797.20 |
| less attorney's fee of one-third | | (19,932.40) |
| balance | | 39,864.80 |
| lien of respondent | 17,152.83 | |
| less proportionate share of fees and | | |
| expenses (.3355866 × $17,152.83) | (5,756.26) | |
| | 11,396.57 | (11,396.57) |
| net to petitioner | | 28,468.23 |

Under this distribution, petitioner would receive a total of $45,621.06, $5,756.26 over and above the amount representing his $60,000 damages recovery minus expenses.

brought against the shipowner. We granted certiorari to resolve this recurring question, on which the Courts of Appeals have been divided.[3] 441 U. S. 942 (1979). We affirm.

## II

Petitioner's argument amounts to an appeal to the equitable principle that when a third person benefits from litigation instituted by another, that person may be required to bear a portion of the expenses of suit. He invokes cases establishing that in certain circumstances, courts should exercise their equitable powers to charge beneficiaries with a share of the expenses of obtaining a "common fund" through litigation. See *Boeing Co.* v. *Van Gemert,* 444 U. S. 472 (1980); *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240, 257–259 (1975); *id.,* at 275–280 (MARSHALL, J., dissenting); *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375 (1970); *Sprague* v. *Ticonic National Bank,* 307 U. S. 161 (1939). When measured against the language, structure, and history of the Longshoremen's and Harbor Workers' Compensation Act, however, petitioner's argument must fail.

The Act provides a comprehensive scheme governing an injured longshoreman's rights against the stevedore and shipowner. The longshoreman is not required to make an election between the receipt of compensation and a damages action against a third person, 33 U. S. C. § 933 (a). After receiving a compensation award from the stevedore, the longshoreman is given six months within which to bring suit against the third

---

[3] The Ninth and Fourth Circuits have held that the stevedore should be charged with a share of the longshoremen's legal expenses, *Bachtel* v. *Mammoth Bulk Carriers, Ltd.,* 605 F. 2d 438 (CA9 1979); *Swift* v. *Bolten,* 517 F. 2d 368 (CA4 1975). The First Circuit, like the Second, has disallowed apportionment, *Cella* v. *Partenreederei MS Ravenna,* 529 F. 2d 15 (1975), cert. denied, 425 U. S. 975 (1976). The Fifth Circuit has adopted a third approach calling for an individualized inquiry into whether apportionment is fair in the particular case, *Mitchell* v. *Scheepvaart Maatschappij Trans-Ocean,* 579 F. 2d 1274 (1978).

party. 33 U. S. C. § 933 (b). If he fails to seek relief within that period, the acceptance of the compensation award operates as an assignment to the stevedore of the longshoreman's rights against the third party. The Act makes explicit provision for the distribution of any amount obtained by the stevedore in a suit brought pursuant to that assignment. The stevedore is entitled to reimbursement of all compensation benefits paid the employee, and its costs, including attorney's fees. Of the remainder, four-fifths is distributed to the longshoreman, and one-fifth "shall belong to the employer." 33 U. S. C. § 933 (e).[4]

The Act does not expressly provide for the distribution of amounts recovered in a suit brought by the longshoreman. The unambiguous provision that the stevedore shall be reimbursed for all of his legal expenses if he obtains the recovery does, however, speak with considerable force against requiring him to bear a part of the longshoreman's costs when the longshoreman recovers on his own. There is no reason to believe that Congress intended a different distribution of the expenses of suit merely because the longshoreman has brought

---

[4] That section provides:

"Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);

"(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

"(C) all amounts paid as compensation;

"(D) the present value of all amounts thereafter payable as compensation, . . . and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title . . . ; and

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer."

the action. Petitioner asserts, however, that in the absence of an explicit statutory resolution, the recovery against the shipowner represents a common fund for whose creation the stevedore may properly be charged. To evaluate this argument we turn to the history of the relevant provisions of the Act.

## III

As originally enacted in 1927, the Act required a longshoreman to choose between the receipt of a compensation award from his employer and a damages suit against the third party. Act of Mar. 4, 1927, § 33, 44 Stat. 1440. If the longshoreman elected to receive compensation, his right of action was automatically assigned to his employer. In 1938, however, Congress provided that in cases in which compensation was not made pursuant to an award by a deputy commissioner (appointed by the Secretary of Labor, see 33 U. S. C. § 940), the longshoreman would not be required to choose between the compensation award and an action for damages. Under the 1938 amendments, no election was required unless compensation was paid pursuant to such an award. See Act of June 25, 1938, ch. 685, §§ 12, 13, 52 Stat. 1168.

Like the present version, the Act as amended in 1938 did not make provision for the distribution of amounts recovered from the third party in a suit brought by the longshoreman. The lower courts, however, interpreted the Act to require that the stevedore be reimbursed for his compensation payment out of the sum recovered from the third party. Congress was understood not to contemplate double recovery on the longshoreman's part, and the stevedore did not, therefore, lose the right to reimbursement for its compensation payment. See, e. g., *The Etna,* 138 F. 2d 37 (CA3 1943); *Miranda* v. *Galveston,* 123 F. Supp. 889 (SD Tex. 1954); *Fontana* v. *Pennsylvania R. Co.,* 106 F. Supp. 461 (SDNY 1952) (Weinfeld, J.), aff'd on opinion below *sub nom. Fontana* v. *Grace Line, Inc.,* 205 F. 2d 151 (CA2), cert. denied, 346 U. S. 886 (1953).

Under the 1938 legislation the lower courts also decided that the stevedore should not be required to bear a proportionate share of the longshoreman's legal expenses. To force the stevedore to do so, it was observed, would guarantee the longshoreman a total recovery in excess of the amount he received in his third-party action. Solely by virtue of the compensation scheme, then, the longshoreman would receive a greater sum than would be possible in an ordinary suit for damages. At the same time the stevedore would be prevented from recovering the full amount of its compensation payment. The courts concluded that these results would violate legislative purposes made manifest by the express provision that the employer may recover its legal expenses from the fund created by its own suit against the third party. See *Davis* v. *United States Lines Co.*, 253 F. 2d 262 (CA3 1958); *Oleszczuk* v. *Calmar S. S. Corp.*, 163 F. Supp. 370 (Md. 1958); *Fontana* v. *Pennsylvania R. Co., supra,* at 463–464.

In 1959, Congress amended the Act to delete the election-of-remedies requirement altogether. Act of Aug. 18, 1959, 73 Stat. 391. Existing law was felt to "wor[k] a hardship on an employee by in effect forcing him to take compensation under the act because of the risks involved in pursuing a lawsuit against a third party." S. Rep. No. 428, 86th Cong., 1st Sess., 2 (1959). The result was that an injured employee "usually elects to take compensation for the simple reason that his expenses must be met immediately, not months or years after when he has won his lawsuit." *Ibid.;* see H. R. Rep. No. 229, 86th Cong., 1st Sess. (1959).

Responding to this inequity, the 1959 amendment provided that even when compensation was paid pursuant to an award of the deputy commissioner, the longshoreman's right of action would not be assigned to the stevedore until six months from the date of the award. The legislative history demonstrates that Congress did not intend to alter the rule allowing the stevedore to recover the full amount of its lien from the long-

shoreman's third-party recovery. An employee "would not be entitled to double compensation," for "an employer must be reimbursed for any compensation paid to the employee out of the net proceeds of the recovery." S. Rep. No. 428, *supra,* at 2. During the hearings on the 1959 amendments, the rule that an employer would not be required to bear a proportionate share of the longshoreman's cost of recovery was specifically drawn to Congress' attention, and one witness suggested that it should be abandoned.[5] Instead, Congress elected not to disturb the existing rule.[6] Recognizing that no change had

---

[5] See Hearings on Bills Relating to the Longshoremen's and Harbor Workers' Compensation Act before a Special Subcommittee of the House Committee on Education and Labor, 84th Cong., 2d Sess., 51–58 (1956) (discussing difference between New York law, which allowed an employer to receive full reimbursement of its workmen's compensation payment, and New Jersey law, which required proportionate payment of expenses); see also *id.,* at 38. Indeed, the 1959 bill was largely modeled after the New York workmen's compensation provisions, see S. Rep. No. 428, 86th Cong., 1st Sess., 3 (1959), and under New York law it was well established that the longshoreman would be required to pay his own legal fees. See *Kussack* v. *Ring Constr. Corp.,* 1 App. Div. 2d 634, 153 N. Y. S. 2d 646 (1956), aff'd, 4 N. Y. 2d 1011, 152 N. E. 2d 540 (1958); *Hobbs* v. *Dairymen's League Co-op Assn.,* 258 App. Div. 836, 15 N. Y. S. 2d 694 (1939), appeal dism'd, 282 N. Y. 710, 26 N. E. 2d 823 (1940).

[6] That rule was expressly approved on the floor of the Senate:

"Mr. BUTLER. . . . I understand that the bill merely amends section 33 of the Longshoremen's and Harbor Workers' Act, so as to permit an employee to bring a third-party liability suit without forfeiting his right to compensation under the act. It is my further understanding that the courts have consistently held that the present section 33 of the act gives the employer a lien on the employee's third party recovery for the compensation and benefits paid by the employer.

"Is it the Senator's understanding, then, that the passage of this measure *would in no way affect the present construction of the act with respect to the employer's lien on the employee's third-party recovery for compensation and benefits paid by the employer?*

"Mr. BARTLETT. The distinguished Senator from Maryland is correct.

"In further explanation on this point, I ask unanimous consent to have

been contemplated, the courts continued to hold that a stevedore would not be required to bear a proportionate share of the longshoreman's legal expenses. See *Haynes* v. *Rederi A/S Aladdin,* 362 F. 2d 345 (CA5 1966); *Ashcraft & Gerel* v. *Liberty Mutual Ins. Co.,* 120 U. S. App. D. C. 51, 343 F. 2d 333 (1965); *Petition of Sheffield Tankers Corp.,* 222 F. Supp. 441 (ND Cal. 1963).

In 1972, Congress enacted more extensive Amendments to the Act, see *Edmonds* v. *Compagnie Generale Transatlantique,* 443 U. S. 256, 262 (1979), and it is these Amendments that according to petitioner, justify a change in the rule with respect to attorney's fees. Concerned that compensation benefits had been far too low, Congress altered the benefit structure of the Act so as to increase both maximum and minimum

---

printed at this point in the RECORD a brief statement from the Committee on Labor and Public Welfare . . . :

" 'There is no necessity for a provision giving the employer a lien on the employee's third-party recovery for the compensation and benefits paid by the employer, inasmuch as the courts have construed the present section 33 as providing such lien. In addition, as a result of judicial construction of the existing section, the employee is entitled to deduct his expenses incurred in third-party proceedings,' " 105 Cong. Rec. 12674 (1959) (emphasis added).

The express statement that the employee should deduct his expenses from the recovery is, of course, a plain indication that those expenses would not be borne by the stevedore. Cf. n. 13, *infra.*

The House version of the amendment would have provided: "[T]he carrier liable for the payment of . . . compensation shall have a lien on the proceeds of any recovery from [a] third person, whether by judgment, settlement, or otherwise, after the deduction of the reasonable and necessary expenditures, including attorney's fees, incurred in effecting such recovery, to the extent of the total amount of compensation awarded under, or provided, or estimated, by this Act . . . ." H. R. Rep. No. 229, 86th Cong., 1st Sess., 6 (1959). The House passed this version of the amendment, 105 Cong. Rec. 5561–5562 (1959), but later concurred in the Senate version on the evident assumption that the Senate version also adopted existing judicial practice. See *id.,* at 15343.

benefits substantially.[7]   These increases were linked to two
provisions designed to reduce litigation and to ensure that
stevedores would have sufficient funds to pay the additional
compensation.   First, Congress abolished the unseaworthiness
remedy for longshoremen, recognized in *Seas Shipping Co.*
v. *Sieracki,* 328 U. S. 85 (1946), and limited the longshore-
man's action against the shipowner to one based on negli-
gence.   Second, Congress eliminated the third-party action by
the shipowner against the stevedore, recognized in *Ryan Ste-
vedoring Co.* v. *Pan-Atlantic S. S. Corp.,* 350 U. S. 124 (1956).
In that case the Court held that a shipowner could obtain
damages from the stevedore when it showed that the steve-
dore had breached its warranty to the shipowner of workman-
like service.   As the House Report notes, the consequence
was that "a stevedore-employer is indirectly liable for dam-
ages to an injured longshoreman who utilizes the technique of
suing the vessel," with the result "that much of the financial
resources which could better be utilized to pay improved com-
pensation benefits were now being spent to defray litigation
costs."   H. R. Rep. No. 92–1441, p. 5 (1972); see S. Rep. No.
92–1125, p. 9 (1972).   Indeed, there was considerable testi-
mony during the hearings that third-party actions had re-
sulted in congested courts and that the primary beneficiaries
had been lawyers, not injured longshoremen.[8]   The Senate

---

[7] Before the Amendments, the maximum weekly compensation payment
was $70; after the Amendments, the maximum is 200% of the national
average weekly wage, to be determined annually by the Secretary of Labor.
Before the Amendments, the minimum weekly payment was $18; the
Amendments provide for a minimum in the amount of the lesser of the
employee's full average weekly wage or 50% of the national average
weekly wage.   The Amendments increased or improved benefits in other
ways not material here.   See 33 U. S. C. §§ 906–910.

[8] See Hearings on S. 2318 et al. before the Subcommittee on Labor of
the Senate Committee on Labor and Public Welfare, 92d Cong., 2d Sess.,
33, 38–39, 244, 258, 263, 271, 290, 304, 416, 431, 621–623, 632, 642, 661,

Report stated that "[t]he social costs of these law suits, the delays, crowding of court calendars and the need to pay for lawyers' services have seldom resulted in a real increase in actual benefits for injured workers." *Id.*, at 4. The elimination of the shipowner's cause of action against the stevedore was intended to reduce litigation, immunize stevedores and their insurers from liability in third-party actions, and assure conservation of stevedore resources for compensation awards to longshoremen.

Witnesses also brought to the attention of Congress the longstanding rule [9] that an employer could recover the full amount of its compensation award from the longshoreman's recovery against the shipowner.[10] Congress did not, however, enact any legislation concerning that rule.

Petitioner argues that the 1972 Amendments so altered the equities as to compel a holding that a stevedore must pay a proportionate share of the longshoreman's expenses in a third-party action brought against the shipowner. He observes that before the Amendments, the longshoreman and the stevedore had adverse interests in the third-party action: if the longshoreman were successful in that suit, the shipowner frequently would attempt to require the stevedore to make payment of amounts due the longshoreman. With the abolition of the shipowner's cause of action, the stevedore and the

---

725, 730 (1972); Hearings on H. R. 247 et al. before the Select Subcommittee on Labor of the House Committee on Education and Labor, 92d Cong., 2d Sess., 47–48, 60, 85–86, 176 (1972).

[9] Contrary to MR. JUSTICE BLACKMUN's suggestion, see *post*, at 92, that the somewhat divergent rationales adopted by the lower courts demonstrate that there was no settled rule prior to the 1972 Amendments, we have been unable to find a single case, and none is cited in the dissenting opinion, in which a court held that a stevedore would be required to pay a share of the longshoreman's legal expenses. The uniform rule was to the contrary, and it is that rule of which Congress was informed in 1959 and 1972 and which it approved in 1959. See n. 6, *supra*.

[10] See Hearings on S. 2318 et al., *supra* n. 8, at 160, 371, 720; Hearings on H. R. 247 et al., *supra* n. 8, at 119, 157–158, 295.

longshoreman had a common interest in the longshoreman's recovery against the shipowner. Petitioner concludes that the common-fund doctrine should be available to permit the employee to recover from the stevedore a proportionate share of the expenses of suit.

In light of the Act and its legislative history, however, we are unable to accept petitioner's argument. It is of course true that the stevedore and longshoreman now have a common interest in the longshoreman's recovery against the shipowner, but it does not follow that the stevedore should be required to pay a share of the longshoreman's legal expenses. Congress has not modified 33 U. S. C. § 933 (e), providing that the stevedore is not required to pay its legal expenses in cases in which it has recovered against the shipowner pursuant to an assignment from the longshoreman. Moreover, in 1972 Congress was informed of, but did not alter, the uniform rule that the longshoreman's legal fees would be paid by the longshoreman alone. In these circumstances we are reluctant to take steps to change that rule on our own. See *Edmonds* v. *Compagnie Generale Transatlantique*, 443 U. S., at 273.

In addition, to the extent that the 1972 Amendments offer guidance, they strongly suggest that the rule for payment of attorney's fees was not intended to be altered. The legal expenses incurred by stevedores in connection with third-party actions were understood to be a major obstacle to the funding of increased compensation payments. Numerous witnesses testified that third-party actions frequently inured to the benefit of lawyers, depleting the stevedore's resources and congesting the courts without aiding the injured employee. It would be ironic indeed if statutory amendments designed to eliminate the stevedore's liability in connection with third-party actions were interpreted to give birth to an entirely new liability in the form of a charge for the longshoreman's legal expenses.[11]

---

[11] The dissenting opinion suggests that the "chief" purpose of the 1972 Amendments was to benefit longshoremen, and that the distribution we approve would disserve this purpose in favor of the merely "incidental"

We are unwilling to attribute to Congress an intention to allow creation of a new liability irreconcilable with its general desire to reduce litigation and to ensure conservation of the legal expenses of stevedores and their insurers.[12]

Finally, we return to the original basis for the rule that a stevedore would not be required to pay a portion of the longshoremen's expenses in his suit against the shipowner. The compensation award was intended to be an immediate and readily available payment to the injured longshoreman. By receiving this payment, the longshoreman was not foreclosed from pursuing an action against the shipowner. At the same time, he was not entitled to double recovery, and the stevedore would be reimbursed in full for his compensation payment.[13]

---

intention to conserve stevedore expenses. *Post,* at 94–95. The attempted separation of the two legislative purposes is unpersuasive. Congress found it necessary to eliminate stevedore liability in connection with third-party actions precisely in order to assure that stevedores would have sufficient funds to pay vastly increased compensation benefits to longshoremen. In these circumstances it is for Congress, not this Court, to determine whether a requirement of proportional payment of legal expenses would ultimately benefit injured longshoremen, or instead longshoremen's lawyers, who were found to have been the primary beneficiaries of third-party actions in the past. See *supra,* at 82–84.

[12] Petitioner suggests that a requirement of proportional payment would ultimately aid stevedores by encouraging third-party suits and thus making it more likely that stevedores will receive reimbursement for the compensation payment. The Act, however, contains special incentives designed to encourage the stevedore to bring suit on its own if the longshoreman elects not to do so. See n. 4, *supra.*

[13] Respondent does not challenge the approach adopted in *Fontana* v. *Pennsylvania R. Co.,* 106 F. Supp. 461, 463–464 (SDNY 1952), aff'd on opinion below *sub nom. Fontana* v. *Grace Line, Inc.,* 205 F. 2d 151 (CA2), cert. denied, 346 U. S. 886 (1953), under which the expenses of suit, including attorney's fees, represent the first charge on the recovery against the third party. See S. Rep. No. 428, 86th Cong., 1st Sess., 2 (1959); n. 6, *supra.* Under this view, if the recovery against the shipowner is less than the sum of the lien and the expenses of suit, the longshoreman will receive the full amount of his expenses even if the remainder is in-

The result we reach enables the longshoreman to recover an amount no less than that which he would receive through an ordinary negligence action,[14] and also immunizes the stevedore from liability in connection with the third-party action. If we were to accept petitioner's view, an injured longshoreman would ultimately receive a sum equal to the full amount of his recovery against the shipowner and, in addition, a supplement consisting of the stevedore's contribution to the longshoreman's legal expenses. This supplement would represent a windfall in excess of the amount the longshoreman received as compensation for the injuries he has suffered. The stevedore would not obtain reimbursement for the full amount of its compensation payment, but would instead have that amount reduced by a possibly substantial legal fee. This result would be contrary to the allocation of attorney's fees expressly provided by Congress for suits brought by the stevedore pursuant to an assignment from the longshoreman. In these circumstances we do not believe that the Act and its legislative his-

---

sufficient to reimburse the stevedore for its lien. See *Valentino* v. *Rickners Rhederei, G. M. B. H., SS Etha,* 552 F. 2d 466 (CA2 1977). We do not today address the *Valentino* situation, and contrary to the implication of the dissent, nothing in our decision suggests that the stevedore's lien has priority over the longshoreman's expenses.

[14] See n. 2, *supra,* illustrating that petitioner's distribution scheme would result in a recovery of $5,756.26 in excess of the amount he would receive if there were a simple negligence action and no compensation scheme.

The Act explicitly allows attorney's fees in cases in which an employer declines to pay compensation, 33 U. S. C. § 928, and in cases in which the employer brings suit pursuant to an assignment from the longshoreman. These provisions reinforce the conclusion that if Congress had intended to allow proportionate sharing of legal expenses, it would have done so expressly.

Petitioner suggests that the distribution we approve will result in a $5,756.26 windfall to the respondent, since it is in effect permitted to recover its lien without contributing to the costs of the recovery. But as explained in the text, our review of the Act and its legislative history persuades us that Congress intended the stevedore to recover the full amount of its lien, regardless of who brings the action.

tory can fairly be read to support the distribution proposed by petitioner.[15]

The judgment of the Court of Appeals is

*Affirmed.*

Mr. Justice Blackmun, dissenting.

The Court's approach in this case strikes me as somewhat crabbed. By tilting with the specter of "double recovery," the Court adopts a construction of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. § 901 *et seq.,* that relegates the injured longshoreman's welfare to secondary

---

[15] Nothing we say today is intended to affect the established power of a court of equity to charge beneficiaries with a proportionate share of the costs of creating a common fund through litigation. See Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv. L. Rev. 1597 (1974). Nor are we presented the question whether that power would be properly exercised in the setting of a workers' compensation scheme if the particular Act and its legislative history were ambiguous on the subject. For disparate results in the state courts, compare *Burt* v. *Hartford Acc. & Indem. Co.,* 252 Ark. 1236, 483 S. W. 2d 218 (1972); *Liberty Mut. Ins. Co.* v. *Western Cas. & Sur. Co.,* 111 Ariz. 259, 527 P. 2d 1091 (1974); *Commercial Union Ins. Co.* v. *Scott,* 116 Ga. App. 633, 158 S. E. 2d 295 (1967); *Tucker* v. *Nason,* 249 Iowa 496, 87 N. W. 2d 547 (1958), with *Quinn* v. *State,* 15 Cal. 3d 162, 539 P. 2d 761 (1975); *Security Ins. Co. of Hartford* v. *Norris,* 439 S. W. 2d 68 (Ky. 1969); *Broussard, Broussard & Moresi, Ltd.* v. *State Auto & Cas. Underwriters Co.,* 287 So. 2d 544 (La. App. 1973), cert. denied, 290 So. 2d 908 (La. 1974); *Carter* v. *Wooley,* 521 P. 2d 793 (Okla. 1974). See generally 2A A. Larson, Workmen's Compensation § 74.32 (1976 and 1979 Supp.).

A number of States have required proportional sharing of legal expenses by statute. See, *e. g.,* Idaho Code § 72–223 (1973); Ill. Rev. Stat., ch. 48, § 138.5 (1977); Mich. Comp. Laws Ann. § 418.827 (Supp. 1978); N. Y. Work. Comp. Law § 29 (McKinney Supp. 1979); Pa. Stat. Ann., Tit. 77, § 671 (Purdon Supp. 1979); Va. Code § 65.1–43 (1973); Wash. Rev. Code Ann. § 51.24.010 (Supp. 1978). See generally Larson, *supra;* Atleson, Workmen's Compensation: Third Party Actions and the Apportionment of Attorney's Fees, 19 Buffalo L. Rev. 515 (1970). That route, of course, remains available to Congress.

status, well behind the interest of his stevedore-employer in conserving resources.

Under the Court's rule, the stevedore has everything to gain and nothing to lose. The longshoreman takes the risk and the worry of the litigation and, if he gains enough, the stevedore is home free. This result does not seem to me to square with the Court's recent recognition that the Act should be construed with the beneficent purpose of worker protection foremost in mind. *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249, 268 (1977). Nor does it entirely square with the modern concept that the costs of industrial accidents are expenses to be borne by the industrial enterprise and not by the injured workman.[1] It also fails to do equity where equity is due. Since I cannot agree that Congress has required us so to deviate from the principles of equity and the governing purposes of the Act, I respectfully dissent.

The Court recognizes, *ante,* at 79, that although Congress has provided a detailed scheme for the distribution of the amount recovered in a third-party action initiated by the *stevedore,* it has never fixed by statute the details of distribution when it is the *longshoreman* who brings suit. The Court, nonetheless, discovers and espouses a settled judicial rule for division of the recovery in an action by the longshoreman, and it transforms that rule into a statutory mandate by pronouncing that we should not presume to change what the Court thinks Congress, by inaction, apparently has left in force. *Ante,* at 85–86. I feel the Court has oversimplified the variegated history of the judicial "rule," has overdrawn the clarity of congressional approval of it, and has failed to estimate the degree to which the rationale for exonerating the stevedore from bearing a portion of the attorney's fees was undermined by the 1972 Amendments to the Act.

The earliest cases mentioned by the Court, *The Etna,* 138

[1] See J. Boyd, The Law of Compensation for Injuries to Workmen 10 (1913); H. Somers & A. Somers, Workmen's Compensation 26 (1954).

F. 2d 37 (CA3 1943), and *Fontana* v. *Pennsylvania R. Co.*, 106 F. Supp. 461 (SDNY 1952), aff'd mem. *sub nom. Fontana* v. *Grace Line, Inc.*, 205 F. 2d 151 (CA2), cert. denied, 346 U. S. 886 (1953), chiefly concerned the broad question, not at issue here, whether the stevedore is entitled to *any* recoupment from the longshoreman's recovery against the shipowner. These cases established that the stevedore is entitled to recoupment, and thus that the longshoreman is not to receive the "double recovery" of full statutory compensation plus full damages in an action at law. No one, at this juncture, doubts the validity of this holding or its approval by Congress. See 33 U. S. C. § 933 (f); S. Rep. No. 428, 86th Cong., 1st Sess., 2 (1959). The question we presently face is a much narrower one that a general dislike for any double recovery does not at all resolve.

To be sure, *Fontana, supra,* and *Davis* v. *United States Lines Co.*, 253 F. 2d 262 (CA3 1958), held, as the Court does today, that attorney's fees for a third-party action must be borne in their entirety by the longshoreman. These cases drew support for this conclusion from both the statutory division of recovery when the stevedore brings suit and the view that the "expense of securing the recovery is, as in equity it should be, a first charge against the fund itself." *Fontana* v. *Pennsylvania R. Co.*, 106 F. Supp., at 464. As a review of subsequent case law demonstrates, however, this reasoning never has achieved the broad acceptance that the Court's opinion implies. In the Fourth and the Fifth Circuits, and perhaps even in the Second Circuit, alternative approaches to the problem have been advocated and applied.

In *Ballwanz* v. *Jarka Corp.*, 382 F. 2d 433 (1967), the Fourth Circuit adopted an entirely different rationale. The court recognized that *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.*, 350 U. S. 124 (1956), which permitted shipowners to bring indemnity actions against stevedores, produced a "rotary situation" in which the stevedore was effectively aligned

with the shipowner against the third-party suit. 382 F. 2d, at 434. As a result, recoupment of the stevedore's compensation lien from the longshoreman's recovery involved "no more than a transfer of the charge in that amount from its [insurer's] loss as compensation carrier to its loss as liability carrier." *Id.*, at 435. It was the contrariety of interests and lack of true benefit to the stevedore, and not the arguments advanced in *Fontana* and *Davis*, that led the court to refuse proration of fees.

In the Fifth Circuit, the proper distribution of recoveries in third-party actions initiated by longshoremen has been the subject of continuing debate. *Strachan Shipping Co.* v. *Melvin*, 327 F. 2d 83 (1964), applied *Fontana*'s conclusion that attorney's fees are a "first charge" against the recovery in a case where the recovery was so small that nothing was left for the longshoreman. The decision provoked a vigorous dissent, which proposed a different reading of *Fontana* and *Davis* that would give the compensation lien priority over the fees. *Id.*, at 87–89. This alternative appears to have been applied in *Haynes* v. *Rederi A/S Aladdin*, 362 F. 2d 345, 351 (1966), cert. denied, 385 U. S. 1020 (1967), albeit on the ground that the stevedore was represented in the action by its own counsel. Eventually, however, both readings of the *Fontana-Davis* "rule" were displaced in the Fifth Circuit by an approach that, in certain circumstances, required the longshoreman and the stevedore to "pay attorney's fees and litigation expenses in proportion to their recoveries." *Chouest* v. *A & P Boat Rentals, Inc.*, 472 F. 2d 1026, 1035–1036, cert. denied *sub nom. Travelers Ins. Co.* v. *Chouest*, 412 U. S. 949 (1973).

In the Second Circuit, *Fontana*'s approach has not been uniformly followed. *Landon* v. *Lief Hoegh & Co.*, 521 F. 2d 756, 761 (1975), cert. denied *sub nom. A/S Arcadia* v. *Gulf Ins. Co.*, 423 U. S. 1053 (1976), treated the compensation lien as an "express trust for the benefit of the employer" with the

longshoreman as statutory trustee. In the District Courts, moreover, both the "conflict" theory developed in *Ballwanz* and the approach advocated by the *Strachan* dissent gained some currency. See, *e. g., Spano* v. *N. V. Stoomvaart Maatschappij "Nederland,"* 340 F. Supp. 1194 (SDNY 1971); *Russo* v. *Flota Mercante Grancolombiana,* 303 F. Supp. 1404, 1407 (SDNY 1969). These cases were subsequently disapproved in *Valentino* v. *Rickners Rhederei, G. M. B. H., SS Etha,* 552 F. 2d 466 (CA2 1977), which reinstated the *Fontana* rationale.

I mention these variations and counterpoints to the *Fontana-Davis* theme not to challenge the Court's assertion that, prior to the 1959 and 1972 amendments to the Act, stevedores generally were exonerated from bearing a portion of attorney's fees incurred in longshoreman-initiated actions, but rather to suggest that the Court errs when it implies that the case law presented a *settled* judicial construction of the Act for Congress to approve. Indeed, the situation was even more complicated than this brief exposition illustrates, since the various rationales employed by the courts led them into disarray over the handling of attorney's fees in cases where the third-party recovery was insufficient to satisfy both the fees and the stevedore's compensation lien in their entirety. See *Valentino* v. *Rickners Rhederei, G. m. B. H., SS Etha,* 417 F. Supp. 176, 177–179 (EDNY 1976), aff'd on other grounds, 552 F. 2d 466 (CA2 1977). The legislative history relied upon by the Court, *ante,* at 80–81, 84, fails to show that Congress delved into the intricacies of this judicial debate, or indeed that it did more than barely scratch the surface in consideration of fee allocations in actions brought by longshoremen. The most that can be gleaned from this history is that Congress intended not to interfere with judicial developments in this sphere.

As a result, I think that the Court informs congressional inaction with the wrong meaning, and that it draws an analogy to the statutory allocation of stevedore-initiated recoveries where none, in fact, exists. Had Congress intended rote ap-

plication of the allocation scheme in 33 U. S. C. § 933 (e) to recovery in a longshoreman-initiated action, specification of this result would have been a simple task, and one would have expected Congress to say so. Instead, despite the obvious prevalence of such suits,[2] Congress left the matter to the judicial process. Although it is somewhat precarious to find significance in a congressional omission, I view the absence of action in this case as a clear signal that Congress regarded the allocation of a recovery in a suit by a longshoreman as a more fluid and complicated matter than allocation in a suit by a stevedore, and that it left the courts free to balance the equities instead of commanding adherence to a strict "arithmetic ranking" of liens. See *Mitchell* v. *Scheepvaart Maatschappij Trans-Ocean*, 579 F. 2d 1274, 1279 (CA5 1978).

Adaptation of the statutory framework, of course, might be desirable if it achieved an equitable result. But it does not. Indeed, the analogy to the division of a recovery under § 933 (e) itself is flawed. When the stevedore brings the lawsuit, its own recovery comes first after expenses and costs of litigation have been paid; the longshoreman, as nonparticipating beneficiary, receives only a portion of the remainder. In contrast, under the Court's ruling, the longshoreman who brings suit must wait in line until the nonparticipating stevedore's interests have been satisfied in full. Under the statute, then, the party who takes the risk of loss receives priority of treatment. Under the Court's ruling, he does not. The apparent symmetry of a strict analogy to the statutory formula thus produces, for the longshoreman, an asymmetrical result. Considerations of equity surely do not require that approach.

As I weigh the equities, the most persuasive reason heretofore for exonerating the stevedore from bearing a proportion-

---

[2] See *Valentino* v. *Rickners Rhederei, G. M. B. H., SS Etha*, 552 F. 2d 466, 469 (CA2 1977), where the court took notice that "stevedores do not, as a practical matter, pursue these lawsuits—presumably for fear of antagonizing their customers."

ate share of attorney's fees has been the stevedore's contingent liability for indemnity of the shipowner under *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.*, 350 U. S. 124 (1956). That liability, of course, was eliminated by the 1972 Amendments to the Act. See *Edmonds* v. *Compagnie Generale Transatlantique*, 443 U. S. 256, 262 (1979); *Northeast Marine Terminal Co.* v. *Caputo*, 432 U. S., at 261–262. Thus, it is now clear from the outset of each longshoreman's suit that the attorney's efforts serve the interests of the stevedore as well as those of the longshoreman. If the action is successful, the stevedore obtains recoupment of the compensation benefits it has paid, without risk, without the jeopardy to customer relations that might arise if the stevedore or its insurer brought the suit, and without adjustment for the possibility that the stevedore itself is partly responsible for the injury. The amount of the stevedore's recoupment ordinarily depends directly on the lawyer's skill in proving both the shipowner's negligence and damages. This direct pecuniary interest in the outcome of the litigation justifies, in my view, an equitable allocation of the costs of bringing suit in proportion to recovery from the common fund. See *Sprague* v. *Ticonic National Bank*, 307 U. S. 161, 166–167 (1939). Without that allocation, the longshoreman must bear all the risk for only a limited part of the benefit.

In addition to eliminating the only sound reason for refusing an allocation on equitable grounds, the 1972 Amendments also show clearly that congressional concern was primarily for the workman and not for the stevedore-employer or for the shipowner. The chief purpose of the Amendments was to benefit the longshoreman. Congress' desire to reduce excessive litigation and thus to conserve stevedore resources, of which the Court makes so much, was incidental and secondary to this purpose. When, for example, Congress eliminated the litigation merry-go-round produced by the indemnity and unseaworthiness actions created in *Ryan Stevedoring Co.* v.

*Pan-Atlantic S. S. Corp.*, *supra*, and *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85 (1946), see *ante*, at 82–83, it did so not out of naked solicitude for shipowners and stevedores, but because this layering of recoveries failed to produce "a real increase in actual benefits for injured workers." S. Rep. No. 92–1125, p. 4 (1972), quoted *ante*, at 84. Yet the Court now advances this secondary purpose to justify a reduction of the longshoreman's recovery in the third-party negligence action that Congress retained primarily for his benefit; and it does so *because* proration of attorney's fees would result in a "real increase" in the longshoreman's total compensation. I cannot avoid the suspicion that congressional intent has been stood on its head.

The Court also makes much of the putative "windfall" a longshoreman would receive if petitioner prevailed. *Ante*, at 87. The longshoreman would receive no windfall. Any costs or fees he must pay reduce his net recovery below the amount of his adjudicated injuries. This deficit would be alleviated, but never exceeded, if the stevedore were charged with a proportionate share of the attorney's fees. The longshoreman, of course, would be better off than if he had to depend either on the statutory compensation or on the negligence suit alone. But Congress long ago eliminated the necessity of electing a remedy, and an increase in total recovery accomplished by resort to both methods of redress is fully consistent with the statutory scheme. So long as the longshoreman's total compensation remains less than his actual damages, there is no true "double recovery."

To use the Court's own adjective, *ante*, at 85, it is "ironic" that from this litigation petitioner will receive, by today's ruling, only $2,779.57 more than the attorney's fees of $19,932.40. The Court thus acts to ensure that third-party actions will remain, as they were before the 1972 Amendments, a litigation playground for others instead of a method by which the injured longshoreman realistically may hope to

recover for losses that are not covered by the statutory compensation scheme. I shall be interested to see whether the Court adheres to its present logic when presented with a case where the third-party recovery is so small that virtually nothing is left for the longshoreman. Where the recovery against the shipowner is less than the stevedore's lien and the expenses of the suit, see *ante,* at 86–87, n. 13, it is to be hoped that the injured longshoreman will not be required to disgorge part of his compensation payments. Yet such disgorgement would not be inconsistent with the gloss on congressional priorities that the Court imposes today.