Luis CASTRO, Plaintiff,

v.

MAHER TERMINALS, INC., Defendant.

Civ. A. No. 88–4219.

United States District Court,
D. New Jersey.

April 14, 1989.

Robert A. Solomon, Daniels & Solomon, Newark, N.J., for plaintiff.

Dean T. Bennett, Kenny, Stearns & Broderick, Newark, N.J., for defendant.

## OPINION

WOLIN, District Judge.

In this action for declaratory relief, plaintiff Luis Castro now moves for summary judgment declaring that defendant Maher Terminals, Inc.'s ("Maher") lien for workers' compensation benefits paid pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.*, amounts to $17,213.92 as a matter of law, as opposed to the $18,138.92 claimed by Maher. Maher cross-moves for summary judgment. The $925 difference concerns expenditures by Maher for Castro to be examined by doctors at the choosing of either Maher or the Secretary of Labor in order to confirm medical findings made by Castro's own doctor. The Court finds that the costs for these confirmation medical examinations are not benefits to the employee under the terms of LHWCA and should not be included as part of Maher's lien on the funds collected by Castro in his suit against the third-party responsible for his injury. Therefore, the Court will order that the sum of $17,213.92 be fixed as Maher's compensation lien.

## I. BACKGROUND

Plaintiff was employed by Maher as a longshoreman. On April 14, 1987, during the course of his employment, plaintiff suffered serious injuries. After being treated and released from a hospital emergency room, Castro chose Dr. Aruna Patel to be his treating physician. Dr. Patel prescribed medication for Castro and provided treatment. Castro was totally disabled for a period of approximately 16 weeks. Dur-

ing this time, Maher, pursuant to its rights under 33 U.S.C. § 907(d), chose to have Castro examined by two different doctors at a combined cost of $550. One of these doctors, Dr. Greifinger, found that plaintiff was able to return to work on June 5, 1987. Plaintiff's physician, Dr. Patel, disagreed with Dr. Greifinger's finding and believed that Castro was still disabled as of July 21, 1987.

In order to resolve the dispute, a Deputy Commissioner arranged for an impartial examination of Castro by Dr. Kenneth Seslow. Dr. Seslow examined Castro on June 15, 1987, and found that he was totally disabled on June 15, 1987 and that he required another four to six weeks of treatment. Pursuant to 20 C.F.R. § 702.412(a), the Department of Labor charged Maher $200 for Dr. Seslow's examination.

On October 16, 1987, Castro was examined by Dr. Jerome Margolies at the request of Castro's federal compensation representative. Dr. Margolies found that plaintiff sustained a 15% disability of the right arm. Once again, Maher chose to have Castro examined by another physician, Dr. Nelson Manowitz, who found that Castro sustained no permanent disability. Maher eventually settled Castro's disability claim by paying him for a 3% permanent partial disability of the right arm. Maher paid Dr. Manowitz $175 for his examination of Castro.

After plaintiff's accident, he instituted a third party action against Hamilton Trucking Company and Diego Rodrigues. On August 25, 1988, Castro settled the third party action for the sum of $46,138.92. Maher subsequently asserted a lien against the settlement for the amount of compensation benefits it paid to Castro under LHWCA. Included in the $18,138.92 lien asserted by Maher is the $725 Maher paid to doctors it chose to examine Castro and the $200 the Department of Labor charged Maher for Dr. Seslow's impartial examination of Castro. Plaintiff objects to the inclusion of the $925 and brought the instant action for declaratory relief in order to decide the issue.

## II. DISCUSSION

The Longshore and Harbor Workers' Compensation Act provides a comprehensive scheme governing an injured longshoreman's rights against the stevedore and shipowner. See *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) (providing a detailed description of the history and purposes of the LHWCA). Essentially, LHWCA is a detailed workers' compensation scheme which sets out the responsibility of the employer to provide medical and compensation benefits to an injured longshoreman.[1] LHWCA does not disallow an employee from bringing a separate action against a negligent third party,[2] but the

---

1. 33 U.S.C. § 905(a) provides:
   (a) Employer liability; failure of employer to secure payment of compensation
   The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.
   33 U.S.C. § 907(a) provides:
   (a) General requirement
   The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require.

2. 33 U.S.C. § 933(a) states:
   (a) Election of remedies
   If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than

Act does not expressly provide for the distribution of amounts recovered in suits brought by longshoremen against third parties. *Bloomer,* 445 U.S. at 78, 100 S.Ct. at 928. This is in contrast to suits brought by the employer against a third party, for which the Act provides a detailed plan of distribution. 33 U.S.C. § 933(e).[3]

Although the Act does not explicitly provide for an employer's lien on an employee's recovery against a third-party, "courts have uniformly held that the employer has a subrogation right to be reimbursed from the worker's net recovery from a third party for the full amount of compensation benefits already paid." *Peters v. North River of Morristown, N.J.,* 764 F.2d 306 (5th Cir.1985). Plaintiff does not dispute that Maher has a valid lien, in the amount of compensation and medical payments Maher paid to Castro, against Castro's $46,138.92 recovery from Hamilton Trucking Company. Plaintiff does dispute that the expenses Maher incurred by choosing to have Castro examined by physicians of Maher's choosing and the amount charged to Maher by the Department of Labor for the impartial examination of Dr. Seslow are properly considered LHWCA compensation benefits to Castro that are included in Maher's lien.

■ Considering first the matter of the $200 charge by the Department of Labor, the Court finds that the relevant statutory and regulatory language strongly suggests that the final burden for the expense of an impartial medical examination made pursuant to 33 U.S.C. § 907(e) should be borne by the employer and not transferred to the employee by virtue of the employer's compensation lien. 33 U.S.C. § 907(e) states in part:

> The Secretary shall have the power in his discretion to charge the cost of examination or review under this subsection to the employer, if he is a self-insurer, or to the insurance company which is carrying the risk....

The identical language is used in the relevant regulatory guidelines. 20 C.F.R. § 702.412.

In the present case, the Department of Labor chose to charge to Maher the $200 fee for Dr. Seslow's examination. The Department's intent to charge Maher, pursuant to § 907(e), would therefore be thwarted if Maher could claim the $200 expense as part of its compensation lien. Such a claim would place the cost burden for the impartial examination on the employee. As there is no statutory support for such a result, Maher cannot properly include the $200 fee charged by Dr. Seslow as part of its compensation lien.

■ The issue of the $725 paid by Maher to three doctors it chose to have examine plaintiff pursuant to 33 U.S.C. § 907(d)(4)[4]

---

the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.

**3.** That section provides:
(e) Recoveries by assignee
Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:
(1) The employer shall retain an amount equal to—
(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);
(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;
(C) all amounts paid as compensation;
(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and
(2) The employer shall pay any excess to the person entitled to compensation or to the representative.

**4.** That section provides:
(d) Request of treatment or services prerequisite to recovery of expenses; formal report of injury and treatment; suspension of compensation for refusal of treatment or examination; justification

is somewhat more complicated, particularly in light of the Supreme Court's decision in *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980). In *Bloomer* the Supreme Court held that an employer is entitled to recover from an employee's third-party recovery the entire amount of LHWCA benefits paid without a reduction for the employer's proportionate share of the litigation expenses and attorneys' fees incurred by the employee. The Supreme Court reasoned that since 33 U.S.C. § 933(e)(1)(A) allows an employer, after bringing suit, to retain from any amount recovered the expenses and attorneys' fees incurred in such a proceeding, "[t]here is no reason to believe that Congress intended a different distribution of the expenses of suit merely because the longshoreman has brought the action." *Bloomer*, 445 U.S. at 78, 100 S.Ct. at 928.

Maher contends that *Bloomer* supports a finding that the expense for examinations by employer-chosen physicians should be included as part of the employer's lien. Plaintiff argues that because such expenses cannot be properly classified as benefits or compensation under LHWCA, the expenses cannot be included as part of the employer's compensation lien.

The Court agrees with plaintiff that expenses incurred by an employer for confirmation medical examinations are not benefits or compensation under LHWCA. 33 U.S.C. § 902(12) defines "compensation" as "the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein." 33 U.S.C. § 907(a) sets forth the employer's obligation to furnish medical services:

> The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require.

Medical examinations by employer-chosen physicians cannot be classified as either compensation paid to employees or medical care necessary for treatment or the process of recovery; these examinations are merely a way an employer can double-check on the prognosis supplied by the employee's chosen, treating physician.

Although the examinations are not benefits or compensation, they must still be analyzed in terms of 33 U.S.C. § 933(e)(1)(A), which provides:

> (1) The employer shall retain an amount equal to—
>
> > (A) The expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or board)....

In *Bloomer*, the Supreme Court found that § 933(e)(1)(A) was applicable to suits brought by the employee as well as the employer, *Bloomer*, 445 U.S. at 78, 100 S.Ct. at 928, and therefore found that the employer was not to be held responsible for attorneys' fees. The Court was primarily concerned that allowing an employee to deduct a proportion of his attorney's fee from an employer's lien would enable the employee to recover more than ordinarily would be recoverable in a simple negligence action. The Court stated:

> If we were to accept petitioner's view, an injured longshoreman would ultimately receive a sum equal to the full amount of his recovery against the shipowner and, in addition, a supplement consisting of the stevedore's contribution to the longshoreman's legal expenses. This supplement would represent a windfall in excess of the amount the longshoreman received as compensation for the injuries he has suffered.

*Bloomer*, 445 U.S. at 87, 100 S.Ct. at 932. The Court was also concerned that deducting an employee's attorney's fees from an employer's lien would potentially subject LHWCA employers to a new source of

---

(4) If at any time the employee unreasonably refuses to submit to medical or surgical treatment, or to an examination by a physician selected by the employer, the Secretary or administrative law judge may, by order, suspend the payment of further compensation during such time as such refusal continues, and no compensation shall be paid at any time during the period of such suspension, unless the circumstances justified the refusal.

liability that ultimately would reduce the funds available for LHWCA compensation and benefits. *Id.*

For purposes of the issue at hand, the question becomes whether the cost of medical examinations by employer-chosen doctors is analogous to attorney's fees and is thus covered by 33 U.S.C. § 933(e)(1)(A) and the dictates of *Bloomer.* The Court finds that the cost of confirmation medical examinations is not analogous to attorney's fees. First of all, disallowing an employer from including the examination costs in its lien would not amount to a windfall for the employee. If an employee brought a civil suit and his medical condition became an issue, it would be the employee's adversary who would incur the cost for any confirmation medical examinations and not the employee. The same result would hold true even if the employer had instituted the action under 33 U.S.C. § 933. Therefore, to allow an employer to include the cost of confirmation medical examinations in its lien would make the employee responsible for a cost he would not otherwise be faced with in a simple negligence action.

Additionally, the expense for medical examinations by employer-chosen physicians is directly under the control of the employer, unlike the cost of attorney's fees in an employee-controlled suit against a third party. The Court does recognize the policy reasons for giving an employer the right to confirm the prognosis given by an employee's physician; however, LHWCA already provides for the extensive policing of physicians by the Secretary of Labor. 33 U.S.C. § 907(c). Thus, the necessity for employers to constantly question the trustworthiness of employees' physicians is somewhat lessened. In contrast, if an employer could shift the cost for confirmation medical examinations to the employee, the employer might be tempted to double-check all findings made by employee-chosen physicians, undermining the statutory right of the employee to choose his own physician. 33 U.S.C. § 907(b).

Because the Court finds that confirmation medical examinations by employer-chosen physicians do not constitute medical benefits or compensation payments to employees under LHWCA, and that the costs for these examinations do not come under 33 U.S.C. § 933(e)(1)(A) and the dictates of *Bloomer,* Maher may not include in its compensation lien on Castro's third-party recovery the $725 Maher paid to physicians it chose to examine Castro. Additionally, Maher may not include in its compensation lien the $200 charged by the Department of Labor for an impartial examination of plaintiff.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment will be granted, defendant's cross-motion will be denied, and the Court will enter judgment declaring that the sum of $17,213.92 be fixed as Maher's compensation lien.