TEXPORTS STEVEDORES CO., et al., Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Edward M. Maples, and Joe Mazzanti, Respondents.

No. 90–4560.

United States Court of Appeals, Fifth Circuit.

May 16, 1991.

W. Robins Brice, Royston, Rayzor, Vickery & Williams, Houston, Tex., for Texports Stevedores Co., et al.

Joshua T. Gillelan, II, Carol DeDeo, Assoc. Sol., U.S. Dept. of Labor, Washington, D.C., for Director.

Stephen M. Vaughn, Sidney Ravkind, Mandell & Wright, Houston, Tex., for Mazzanti and Maples.

Linda M. Meekins, Clerk, Benefits Review Bd., Washington, D.C., for other interested parties.

Before WISDOM, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In these consolidated cases, the employers appeal a decision of the Benefits Review Board (BRB) awarding workers' compensation to two claimants. Both claimants recovered tort damages from third-party tortfeasors. The BRB held that the employers must resume workers' compensation payments when the total amount of compensation payments that would have been paid but for the tort recoveries exceeds the amount of those tort recoveries. The BRB specifically rejected the employers' argument that they were entitled to discount to present value the accrued compensation and thereby reduce the offset and delay resumption of compensation payments. The BRB also concluded that one

employee was entitled to use total medical expenses incurred because of his injury—including the portion reimbursed by his current employer's health insurer—to offset against his tort recovery. We affirm.

## I.

The facts in these cases are uncontested. Claimant Edward M. Maples was injured in February 1960 while working for Texports Stevedores Company. Maples sued a third-party tortfeasor and recovered approximately $90,000 in June 1962. Likewise, claimant Joe R. Mazzanti was injured in March 1971 while working for Lykes Brothers Steamship Company. Mazzanti sued a third-party tortfeasor and recovered approximately $70,000 in April 1976. The parties agree that the Longshore and Harbor Workers' Compensation Act (LHWCA) permits an employer to offset accrued workers' compensation benefits against a claimant's tort recovery. They also agree that these claimants will eventually be entitled to deficiency compensation after their third-party recoveries have been offset.

The Administrative Law Judge (ALJ) held that claimants were entitled to offset against their tort recoveries the accrued compensation benefits from the date of their third-party recoveries without reducing those benefits to present value. The ALJ further held that Maples was entitled to a full credit for all his medical expenses including those that were reimbursed by his health insurer. The BRB affirmed the decisions of the ALJ. The employers petitioned this court for review of the BRB order.

## II.

## A.

■ The primary issue in this case is how to determine the date compensation benefits must be resumed when the claimant has received a lump sum recovery from a third-party tortfeasor. The claimants contend that payments should resume as soon as the total amount of workers' compensation benefits they would have received but for the tort recovery exceeds the

recovery amount. The employers argue that in computing the offset the accrued compensation should be discounted to present value. The effect of this computation is to reduce the offset and extend the time the tort recovery will act as a substitute for compensation payments.

The employers argue that the LHWCA fully supports their argument. They rely primarily on § 33(e), which governs the situation when the employer obtains a tort recovery that is in part for the benefit of the employee. The LHWCA requires the employer in this circumstance to retain for the employee's benefit an amount equal to

the *present value* of all amounts thereafter payable as compensation, such *present value* to be computed in accordance with a schedule prepared by the Secretary, and the *present value* of the costs of all benefits thereafter to be furnished ... to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a *trust fund* to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative.

33 U.S.C. § 933(e)(1)(D) (emphasis added). However, when the *employee* sues the third-party tortfeasor and obtains a recovery, the employer is required to pay as compensation "a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the net amount recovered against such person." *Id.* § 933(f). Unlike § 33(e), § 33(f) does not contain any reference to "present value."

Nevertheless, the employers argue that these two sections should be read together. The employers contend that the present value method of computation in § 33(e) is incorporated into § 33(f) by the language "which the Secretary determines is payable." The employers argue that their interpretation of these two sections is strengthened by the United States Supreme Court decision in *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100

S.Ct. 925, 63 L.Ed.2d 215 (1980). *Bloomer* held that when an employee recovers from a third-party tortfeasor, the employer is entitled to its full reimbursement lien on the recovery without having to bear a pro rata share of the employee's attorneys fees and other recovery costs. The employers contend that the *Bloomer* Court applied the fee apportionment provisions of § 33(e) to a recovery under § 33(f). The employers argue that a parallel interpretation of § 33(f) read together with § 33(e) should allow it to compute the offset by the present value of the employee's accrued compensation.

The employer reads too much into *Bloomer*. Legislative history supported the Supreme Court's conclusion that the employee, like the employer, must bear his own litigation costs.[1] Moreover, several good reasons exist for not reducing to present value the employer's accrued compensation to offset an employee's tort recovery. First and foremost, the relevant statute does not provide for discounting accrued compensation to present value. There is a major distinction between § 33(e) and § 33(f). Section 33(e) explicitly refers to "present value" of future benefits in describing the portion of an employer's third-party tort recovery the employer must retain as a "trust fund" for the payment of future benefits. Conversely, § 33(f) speaks of the employer as required to pay "a sum equal to the excess of the amount ... over the net amount recovered against [the third-party tortfeasor]."

This statutory distinction between § 33(e)'s "trust fund" mechanism which imposes the risk of a reasonable return on compensation insurers and the absence of such a feature in § 33(f) is rational. Section 33(e) places the risks of investment and of failed actuarial expectations upon the workers' compensation insurer which is in the business of undertaking such risks and is able to spread them across many cases. Conversely, the LHWCA, like workers' compensation laws generally, favors periodic payments precisely to avoid having a disabled worker's source of support dependent on managing a lump sum productively. *See generally* 3 A. Larson, *The Law of Workmen's Compensation,* § 82.71, at 15–1243 (1989).

Second, the consistent administrative practice under the LHWCA has always been to compute deficiency compensation by allowing only a dollar-for-dollar credit. No interest on the credit, or present-value discounting of benefits payable, has ever been allowed. According to the Supreme Court, "[c]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Because the Department of Labor has been entrusted with administering the workers' compensation scheme of the LHWCA, its construction of that scheme should be given considerable weight.

Finally, § 33(e) and § 33(f) are based on provisions of the New York Workers' Compensation Law. An earlier attempt under that source statute to allow a "present value" discounting in determining when deficiency compensation was due was invalidated as "not consistent with the provisions of the law" and "an ultra vires act by the [administrator]." *Mohr v. Wiebusch & Hilger, Ltd.,* 247 A.D. 679, 289 N.Y.S. 421, 424, *aff'd per curiam,* 272 N.Y. 655, 5 N.E.2d 378 (1936). Thus, for the reasons stated above, the BRB correctly rejected the employers' computation of a § 33(f)

---

**1.** The *Bloomer* Court relied heavily on its determination that the full-reimbursement rule had been established decisional law for decades and that Congress specifically approved it in 1959, *see* 445 U.S. at 80–81, 100 S.Ct. at 928–930, and did nothing to disturb it in 1972, *see id.* at 85, 100 S.Ct. at 931. Conversely, a present value discount factor such as promoted in the instant case was proposed as an amendment to § 33(f),

*see Longshoremen's & Harbor Workers' Compensation Act Amendments of 1981: Hearings Before the Subcomm. on Labor of the Senate Comm. on Labor and Human Resources,* 97th Cong., 1st Sess., at 12 (1981), but was not included in the final amended version. Thus, although a present value discount factor was proposed in Congress, it was never adopted.

credit predicated on discounting accrued compensation to present value.

### B.

. In the Maples case, the employer argues that only the medical expenses actually paid by Maples should be allowed as an offset against his third-party recovery. Maples incurred large medical expenses relevant to his work-related injury, but he paid only a fraction of those out of his own pocket. The rest of the medical expenses were paid by Maples' current employers' group health carrier. The employer argues that to allow Maples to offset these reimbursed medical expenses against his tort recovery would result in Maples receiving a double recovery. However, general workers' compensation law gives little weight to such a double recovery argument. According to Professor Larson, "the fact that [the worker's] medical expenses were paid by a third party insurer does not deprive him of the right to recover the value of the medical services from his employer's workmen's compensation insurer." 2 A. Larson, *supra,* § 61.12(*l*), at 10–852. This is consistent with the rule followed by the BRB.

In *Turner,* the BRB held that although an injured worker receives payment from a self-procured source for injury-related medical expenses, the employee is nevertheless entitled to recover these expenses from the compensation carrier. *Turner v. New Orleans (Gulfwide) Stevedores,* 5 Ben.Rev.Bd.Serv. (MB) 418, 424–25 (1977), *rev'd on other grounds,* 661 F.2d 1031 (5th Cir. Unit A Nov. 1981). Although *Turner* was a § 7 case in which there was no tort recovery and the employer directly provided medical services,[2] § 33(f) dictates the same result. Section 33(f) focuses on what the employer would have had to pay but for the tort recovery. Under *Turner,* the employer would have had to pay all of Maples' medical expenses including those reimbursed by a health insurer. Those same reimbursed medical expenses should be included in the § 33(f) computation of Maples' credit from his tort recovery. We

agree with the BRB that the full amount of Maples' medical expenses may be used to exhaust his tort recovery credit.

Accordingly, the decision of the BRB is AFFIRMED.

---

**2.** Section 7 provides that "[t]he employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require." 33 U.S.C. § 907(a).