**Calvin L. SCHUSTER, M.D., Plaintiff–Appellant,**

v.

**Ralph H. MARTIN, et al., Defendants–Appellees.**

**No. 88–4541**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1988.

Rehearing and Rehearing En Banc Denied Jan. 17, 1989.

---

Joel W. Howell, III, Jackson, Miss., for plaintiff-appellant.

George O. Evans, George H. Ritter, Jackson, Miss., for defendants-appellees.

Before POLITZ, KING, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Dr. Calvin L. Schuster practiced medicine in Jackson, Mississippi, and enjoyed medical and surgical privileges at Rankin General Hospital ("Rankin"), a publically-administered institution. Beginning in January 1986, a process began whereby Schuster's hospital privileges were gradually eliminated: (1) In January 1986 he agreed to relinquish his medical privileges; (2) in October 1986 he was placed on "pre-admission review," requiring consultation with another physician before admitting "medical" patients; and (3) in January 1987 the board of trustees refused to renew his surgical privileges.

Schuster sued Rankin in the Mississippi Chancery Court of Rankin County ("Chancery"), seeking injunctive relief under state law for alleged violations of his federal and Mississippi constitutional due process rights. In conjunction with this suit, Schuster filed a document entitled "Reservation of All Federal Issues" (the "Reservation") that purported to protect any of Schuster's federal claims from the res judicata and collateral estoppel effects of Chancery's decision. In a short opinion denying the requested injunctive relief,

Chancery explicitly found that Schuster's procedural due process claims "are without merit."

Schuster then brought the instant action in the United States District Court for the Southern District of Mississippi (the "district court") under 42 U.S.C. § 1983 against Ralph H. Martin and other members of Rankin's board of trustees and staff ("defendants") in their individual capacities. The asserted basis of the claim was that the elimination of Schuster's hospital privileges had violated his federal procedural due process rights.

Defendants filed a motion for summary judgment. In granting the same, the district court held that as a matter of law the post-elimination review procedures available to Rankin under Mississippi statutes satisfied federal due process requirements; that the res judicata effect of the Chancery decision barred prosecution of this suit; and that the Reservation is ineffective since the initial litigation was brought voluntarily in state court. Because we find that collateral estoppel manifestly bars the instant litigation, we affirm the summary judgment but do not reach the merits of the reasons stated by the district court.

### I. *Standard of Review.*

In reviewing a summary judgment, we apply the Fed.R.Civ.P. 56(c) summary judgment standard *de novo* and ask whether there are no questions of material fact such that the movant is entitled to judgment as a matter of law.[1] In making this determination, we must draw the inferences most favorable to the party opposing the motion. *Reid,* 784 F.2d at 578. However, despite these guidelines, some deference is due to the district court's interpretation of the law of the state in which it sits. *Smith v. Mobil Corp.,* 719 F.2d 1313, 1317 (5th Cir. 1983).

In the instant case, this principle requires that we accord the district court some deference on its rulings on Mississippi law, to the extent that we reach those issues. Moreover, we may uphold a summary judgment upon finding an adequate, independent basis, regardless of the correctness of the district court's rulings. *See Davis v. Liberty Mutual Ins. Co.,* 525 F.2d 1204, 1207 (5th Cir.1976). Here, we find that the collateral estoppel effect of Chancery's holding that there was no federal procedural due process violation provides such an adequate and independent basis.[2] Hence, we do not find it necessary to determine whether the matter is precluded as well by principles of res judicata.

### II. *Choice of Law.*

It is undisputed that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires us to accord a state court judgment the preclusive effect which it would have under state law. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Brister v. Parish of Jefferson,* 747 F.2d 1019, 1021 (5th Cir.1984). Accordingly, the Mississippi law of collateral estoppel governs our inquiry.[3]

### III. *Collateral Estoppel.*

As indicated above, the district court did not address the issue of collateral estoppel or issue preclusion, even though defendants had raised it as an affirmative defense. However, since we believe that the disposition of this case is so certainly controlled by this doctrine, we adopt it as our reason for affirming the summary judgment.

Under Mississippi law, collateral estoppel operates to bar litigation of an issue where four elements are satisfied: (1) The plain-

---

**1.** *Walker v. Sears Roebuck & Co.,* 853 F.2d 355, 358–59 (5th Cir.1988); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987); *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

**2.** Although the district court did not address collateral estoppel, the defendant did raise it as

an affirmative defense below. Accordingly, there is no waiver problem, as we are not considering the defense *sua sponte.*

**3.** Adhering to this same principle, the district court properly applied Mississippi law in finding the claim to be barred by res judicata.

tiff is seeking to relitigate a specific issue; (2) the issue was already litigated in a prior lawsuit; (3) the issue was actually determined in the prior lawsuit; and (4) the determination of the issue was essential to the judgment in the prior lawsuit. *Dunaway v. W.H. Hopper & Assoc., Inc.,* 422 So.2d 749, 751 (Miss.1982).[4] In addition to these requirements, Schuster contends that collateral estoppel does not apply because of the lack of a strict identity of the defendants in the two suits and because of the effect of the Reservation. These assertions are addressed separately after our discussion of each of the above elements.

### A. Specific Issue.

 Schuster's complaint relies entirely upon the assertion that the refusal to renew his hospital privileges violates the procedural due process requirements of the fourteenth amendment. This identical theory was urged as one of the grounds for the injunctive relief sought in the Chancery proceeding. Schuster argues that because the *relief* sought is different, the *issue* litigated is necessarily different. This argument is unconvincing.

That certain actions violated federal procedural due process was litigated in the Chancery case. A mere difference in related damage theories does not make the issues distinct.[5] *See Holmes v. Jones,* 738 F.2d 711, 713 (5th Cir.1984) (subsequent federal due-process-based action against individual public officials precluded by prior Mississippi chancery action against school board). Furthermore, although the damage issues were not, and probably could not be, litigated in the prior case, they cannot now serve as an independent basis for a new lawsuit if the underlying theory of recovery, i.e., that due process was violated, is precluded from relitigation.[6]

### B. Actually Litigated.

Schuster's answers to interrogatories in the Chancery case refer at least six times to the deprivation of his due process rights. His trial briefs and opening statement also frequently refer to this issue. No serious argument can be made that the matter of a procedural due process violation was not actually litigated.

### C. Actually Determined.

Chancery expressly held that "[t]here appears to be no showing of any denial of such due process by the medical staff of the hospital or the board of trustees of said hospital, and it is the opinion of this Court that such board's decision should not be disturbed." Given that the procedural due process violation was actually litigated, it certainly was also actually determined by the above language.

We note that Chancery had before it procedural due process claims under both the federal and the Mississippi constitutions. However, there is no way to construe its holding as based only upon the state constitution. To have reached the result it reached, Chancery must necessarily have determined that the actions complained of did not violate either due process provision.

### D. Essential to the Judgment.

Whether there was a procedural due process violation was the most important issue considered by Chancery. Its finding of no violation under either the federal or Mississippi constitution was the basis of denying the requested injunction relief. Had Chancery found such a violation, an injunction presumably would have issued. Patently, this issue was essential to the judgment.

---

**4.** The *Dunaway* test has been consistently followed by Mississippi courts. *See Estate of Stutts v. Stutts,* 529 So.2d 177, 179 (Miss.1988); *Welborn v. Lowe,* 504 So.2d 205, 207 (Miss. 1987); *Interest of KMG,* 500 So.2d 994, 996 (Miss.1987).

**5.** The complaints state almost identically the same issue. Moreover, Schuster's briefs filed in

the Chancery action repeatedly stress the same legal and factual points relating to due process deprivation which he now seeks to press in federal court.

**6.** Sovereign immunity principles of Mississippi law may have prevented a damages action against Rankin, since it is a governmentally-established and -run hospital.

## IV. *Same Parties.*

■ Quoting *Green v. Amarada Hess,* 707 F.2d 201, 208 (5th Cir.1983), Schuster argues that, "as with the law of res judicata, Mississippi appears to require a strict-identity of parties before collateral estoppel applies." Assuming that *Green* properly interprets the Mississippi authorities it cites for this proposition, we are satisfied that the strict-identity requirement is met in this case.

The Mississippi law of preclusion applies to parties *and their privies. Walton v. Bourgeois,* 512 So.2d 698, 700 (Miss.1987); *Yazoo v. County of Faulkner,* 209 Miss. 641, 48 So.2d 137, 139 (1950). The individual defendants in the case at bar are obviously privies to Rankin, which was the defendant in the Chancery action. All of the allegations made by Schuster refer to actions taken by the defendants as members of Rankin's board or executive committee. Moreover, only these entities could have taken the actions complained of.

As noted above, Rankin is a public institution established by state statute. Its trustees serve voluntarily and without pay and are appointed by the county board of supervisors pursuant to Miss.Code Ann. § 41–13–15 (Supp.1987). Mississippi law establishes that members of a governmental board, such as the board of trustees or executive committee, act in an official rather than an individual capacity. *Cole v. Tuttle,* 366 F.Supp. 1252, 1254 (N.D.Miss. 1973).

It is also a general principle of the law of preclusion that state officials are, as a matter of law, in privity with the agency or department in which they serve.[7] The policy underlying this principle is to prevent local officials from being subjected to constant litigation in a manner that would deter able citizens from undertaking public service. This policy is fostered especially in situations where, as here, the public service being performed is wholly voluntary.

The cases cited by Schuster are all inapposite, since they involve distinctions made between *private* corporations and their employees.[8] Schuster identifies no authority, supporting his position, that involved an entity similar to Rankin. Ultimately, he relies upon the statement that "Mississippi law in this area has been characterized as being rigid as any now extant" (quoting *Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 540 (5th Cir. Unit A Aug. 1981)). But mere recitation of dictum simply does not answer the argument that defendants and Rankin are in privity for purposes of collateral estoppel.[9]

## V. *The Reservation.*

■ In attempting to preserve all federal claims for a latter proceeding, the Reservation invokes *England v. Louisiana Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), as a shield against res judicata and collateral estoppel. An examination of the policies underlying the *England* doctrine, however, indicates that its application is inappropriate here. *England* involved a situation in which a claim had been relegated to state court under the doctrine of *Pullman* abstention. The Supreme Court held that to reserve federal issues for relitigation in federal court, the plaintiff had to file an express statement of reservation. However, this doctrine does not apply where the plaintiff voluntarily chooses to pursue a state action

---

**7.** *See Sunshine Coal v. Adkins,* 310 U.S. 381, 402, 60 S.Ct. 907, 916, 84 L.Ed. 1263 (1939); *Doyel v. City of Marianna,* 611 F.Supp. 857, 860 (E.D.Ark. 1985); *Patton v. Dumpson,* 498 F.Supp. 933, 943 (S.D.N.Y.1980); *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983); *Thurston v. United States,* 810 F.2d 438, 444–45 (4th Cir.1987).

**8.** *See Magee v. Griffin,* 345 So.2d 1027 (Miss. 1977) (subsequent action may be brought against GMAC employee for wrongful repossession of a car even though it could not be brought against GMAC); *Ditta v. City of Clinton,* 391 So.2d 627 (Miss.1981) (subsequent suit could be brought against a municipality even though prior similar claim against a construction company had been lost).

**9.** Employing a very similar analysis, the district court found such privity for res judicata purposes.

first.[10]

In *Holmes,* 738 F.2d at 714, we held specifically that *England* did not apply to preserve federal claims, both because plaintiff made no clear reservation and because he "voluntarily chose to litigate all his claims in state court." To the extent that *Holmes* leaves any doubt as to what is meant by voluntarily bringing all claims in state court in a case, such as the instant one, in which a formal reservation was made, we adopt the position of the Second Circuit that the *England* doctrine "has no application in this case, in which there never was an abstention by a federal court." *Tarpley v. Salerno,* 803 F.2d 57, 59–60 (2d Cir.1986) (relitigation barred even though plaintiff had made an express reservation). *Accord, Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 97 n. 5 (5th Cir.1982); *Gresham Park Community Org. v. Howell,* 652 F.2d 1227, 1243 n. 48 (5th Cir. Unit B Aug. 1981); *Griffin v. Rhode Island,* 760 F.2d 359, 360 n. 1 (1st Cir.1985). Thus, since Schuster chose voluntarily to bring the Chancery action first, the Reservation is ineffective to overcome the collateral estoppel effect of this prior decision.

### VI. *Conclusion.*

Based upon the collateral estoppel effect of the Chancery decision and the ineffectiveness of the Reservation, we AFFIRM the summary judgment for defendants.[11]

---

**10.** The Supreme Court subsequently has intimated that *England* has no application where a claim is brought first in state court. *Allen v. McCurry,* 449 U.S. 90, 101 n. 17, 101 S.Ct. 411, 418 n. 17, 66 L.Ed.2d 308 (1980).

**11.** Although we do not reach the merits of the reasons stated by the district court in support of its summary judgment, we note that we are not troubled by the equities of our independent application of collateral estoppel. In all likelihood, the reasons given by the district court, as well as other defenses raised below that neither it nor we address, could independently support

the summary judgment. Most significantly, the district court's conclusion, in light of our decisions in *Martin v. Dallas County, Texas,* 822 F.2d 553 (5th Cir.1987), and *Holloway v. Walker,* 790 F.2d 1170, 1174 (5th Cir.1986), that as a matter of law there could be no procedural due process violation since Mississippi provides adequate post-deprivation procedures, appears to be sound. We are convinced that this is not a case in which a deserving plaintiff has lost the opportunity to bring a meritorious claim because of his failure to negotiate the sometimes treacherous curves of civil procedure.