Francisco VILLANUEVA,
Plaintiff–Appellant,

v.

CNA INSURANCE COMPANIES,
Intervenor–Appellee,

Shell Offshore, Inc.,
Defendant–Appellee.

No. 88–3692
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1989.

Kevin C. Schoenberger, Alfred L. Hansen, Schoenberger & Hansen, New Orleans, La., for plaintiff-appellant.

Lance S. Ostendorf, Kathleen K. Charvet, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for CNA Ins. and SHRM Catering.

William L. Brockman, New Orleans, La., for Shell Offshore, Inc.

Before POLITZ, KING, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Francisco Villanueva worked for SHRM Catering Services, Inc. ("SHRM"), aboard an offshore platform owned by Shell Offshore Inc. ("Shell"). He was injured during the course of his employment when a railing he was using to climb stairs gave way. Villanueva filed a third-party complaint against Shell and then, through his attorney, agreed to settle the claim for $18,000. Shell sent Villanueva a letter memorializing the agreement, which Villanueva's attorney signed and sent back. Before the settlement was approved, however, SHRM, through its worker's compensation insurance carrier, CNA Insurance Company ("CNA"), intervened in an attempt to recover medical and compensation benefits that had been paid to Villanueva pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"). When Villanueva and CNA were unable to settle CNA's claim for reimbursement, Villanueva refused to execute a release of his claim against Shell or to accept Shell's check.

Shell tendered the $18,000 into court and moved for summary judgment. The district court granted the motion at a conference at which Villanueva's counsel was not present. Villanueva now appeals, arguing that the settlement agreement was not enforceable and that his attorney's absence at the conference necessitates vacating the summary judgment and allowing him to reinstate his complaint.

Our review of the district court's action proceeds *de novo*, adhering to the same standards which the court used. *See Schuster v. Martin*, 861 F.2d 1369, 1371 (5th Cir.1988). Hence, we review the record independently, make any factual inferences in favor of the non-movant, and then ask whether the movant is entitled to judgment as a matter of law. *Id.* When state law governs issues in dispute, some deference is due to the district court's interpretation of the law of the state in which it sits. *Smith v. Mobil Corp.*, 719 F.2d 1313, 1317 (5th Cir.1983).

Agreeing that the settlement agreement was enforceable under Louisiana law, we uphold the summary judgment, notwithstanding Villanueva's counsel's absence at the summary judgment conference. We also decide issues of law concerning SHRM's and CNA's right to assert an equitable lien on the proceeds of the settlement and the validity of Villanueva's crossclaim against CNA for unreimbursed medical expenses.

## I.

Villanueva brought his complaint against Shell pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*, which governs fixed oil platforms more than three miles off the coast. The OCSLA provides that in any civil or criminal dispute arising on these structures, federal courts are to apply the law of the "adjacent state," to the extent that those laws are applicable and not inconsistent with the OCSLA or other federal laws and regulations.[1] *See id.* § 1333(a)(2)(A); *Matte v. Zapata Offshore Co.*, 784 F.2d 628, 630 (5th Cir.), *cert. de-*

---

1. However, the OCSLA expressly provides for the application of the LHWCA to employee injuries occurring as a result of operations on fixed platforms on the Outer Continental Shelf. *See* 43 U.S.C. § 1333(b); *Doucet v. Gulf Oil Co.*, 783 F.2d 518, 525 (5th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

*nied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed. 2d 171 (1986).[2] Since Louisiana is the adjacent state here,[3] we turn to Louisiana law, which defines and describes "transactions" or "compromises":

> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must either be reduced into writing or recited in open court and capable of being transcribed by the record of the proceeding....

La.Civ.Code Ann. art. 3071 (West Supp. 1989) (emphasis in original).

Louisiana courts favor compromises and treat them as a form of contract. *See Durbin v. Cockerham,* 442 So.2d 634, 636 (La.App. 1st Cir.1983). We have no doubt that Shell's letter, which by its terms reduced the agreement to writing, became a valid and enforceable contract when Villanueva's counsel verified its terms and assented to them by signing and returning the letter to Shell. In Louisiana, attorneys are presumed to have authority to negotiate settlement agreements for their clients. *See F & S Equip. Co. v. International Matex Tank Terminals,* 469 So.2d 256, 257 (La. App. 4th Cir.1985). Absent evidence that the client's consent was not clear and express, the agreement is binding. *Id.* No such evidence is present here.

Villanueva maintains that the letter's requirement that he execute a "full receipt, release, and indemnity" represents a condition precedent to the compromise and that because that condition was not satisfied,

the compromise is not enforceable. However, we do not read the letter that way. Instead, execution of the receipt, release, and indemnity document was a condition subsequent to the underlying settlement, and a condition which Shell imposed and therefore had the right to waive. Thus, when Shell tendered the $18,000, it fulfilled its obligation per the agreement and was entitled to enforce it. The same would be true if Villanueva's counsel had drafted the letter and imposed an analogous condition, an admission of liability for example. We therefore cannot accept Villanueva's contention that the additional terms and conditions stated in the letter indicate that the settlement was only a tentative one.

## II.

■ Intervenors in this suit, SHMA and CNA, ask this court to recognize their lien upon the proceeds of the settlement. Though the LHWCA does not expressly provide for such a lien, the Supreme Court and this circuit have long recognized that the employer has a subrogation right to be reimbursed, from the worker's net recovery from a third-party, for the full amount of compensation benefits the employer has paid. *See Bloomer v. Liberty Mut. Ins. Co.,* 445 U.S. 74, 79, 100 S.Ct. 925, 928, 63 L.Ed.2d 215 (1980); *Allen v. Texaco, Inc.,* 510 F.2d 977, 979–80 (5th Cir.1975).

Our opinion in *Peters v. North River Ins. Co.,* 764 F.2d 306 (5th Cir.1985), gives a thorough overview of the legislative history supporting the employer's right to a lien, and explains how the funds are to be distributed when such a lien arises:

> (1) the worker retains his litigation expenses and a reasonable attorneys' fee; (2) the employer receives from the recovery a credit for any compensation liabili-

---

**2.** *See also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). There, the Supreme Court noted that the "intent behind the OCSLA was to treat the artificial structures covered by the Act as upland islands or as federal enclaves within a landlocked State, and not as vessels, for purposes of defining the applicable law because maritime law was deemed inapposite to these fixed structures." *Id.* at 217, 106 S.Ct. at 2492.

**3.** Shell and CNA both offer an alternative argument in their briefs to the effect that state law should not apply here because the issue of enforceability of settlements is not substantive but procedural. We do not shoot at decoy ducks: The issue here is not what procedures are to be used to enforce an enforceable agreement, but whether the agreement here, memorialized in letter form, constitutes an exchange of promises which the court can be prevailed upon to enforce. We cannot imagine a question of law that is more "substantive."

ty not yet satisfied and reimbursement for compensation already paid; and (3) the worker retains what is left, if anything.

*Id.* at 312 (citing *Ochoa v. Employers Nat'l Ins. Co.,* 724 F.2d 1171, 1177 (5th Cir.), *vacated,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), *adhered to on remand,* 754 F.2d 1196 (5th Cir.1985)).[4] Because the district court's summary judgment order did not address the employer's right to a lien, we remand to the court for findings as to the appropriate amount of the lien[5] and for a determination of the proper distribution of the settlement funds consistent with this opinion and *Peters.*

**4.** *Peters* states that this is the distribution scheme to be followed "at least where the settlement agreement does not specifically mention the compensation lien." 764 F.2d at 312. Here, the letter signed by Villanueva's counsel does state that "out of the payment of $18,000, Mr. Villanueva will reimburse his employer's compensation carrier whatever may be necessary to satisfy their lien, if any." That declaration, however, merely recites the employer's right to reimbursement and does not expressly structure the distribution of proceeds in a way different from what we described in *Peters.* The only lingering question is whether such a statement might be read to require Villanueva to satisfy the compensation lien before deducting his own litigation expenses and attorneys' fees. Even assuming *arguendo* that it could be so read, we noted in *Peters* that "[t]he compensation lien, however, attaches to the worker's net recovery. If the worker's recovery is insufficient to cover both the worker's litigation expenses and the compensation lien, therefore, the litigation expenses must be paid first." *Id.* (citing *Ochoa,* 724 F.2d at 1177). Hence, we see no reason in the instant case to deviate from the distribution scheme set forth in *Peters.*

**5.** CNA's brief on behalf of itself and the employer baldly asserts in its conclusion that the lien amount should include CNA's attorneys' fees for pursuing judicial enforcement of its lien; presumably, that would include fees for proceedings in the district court as well as this appeal. While there is statutory authority permitting employers to offset attorneys' fees against an award when the *employer* prosecutes the action against the third-party tortfeasor, *see* 33 U.S.C. § 933(e)(1)(A), we find no statutory or judicial authority, and CNA does not alert us to any, supporting the proposition that the employer should be entitled to attorneys' fees when it seeks to enforce its lien on the judgment obtained by the *worker.* As the Court stated in *Bloomer,* 445 U.S. at 85, 100 S.Ct. at 931, when Congress has established a statutory scheme

### III.

■ Villanueva also filed a cross-claim in this action, seeking from CNA unpaid workers' compensation benefits and reimbursement for unpaid medical expenses. CNA responds that because Villanueva failed to seek its approval of the settlement with Shell, he is barred under 33 U.S.C. § 933(g)(1)[6] from seeking further benefits and reimbursements. This, too, is an issue we addressed in *Peters,* noting that if an employee settles with a third party for more than the compensation benefits to which he is entitled, section 933(f)[7] extinguishes the employer's liability for any un-

thoroughly governing such actions, we should be reluctant to deviate from the general rule that each party pays its own fees, and award attorneys' fees absent express statutory authorization. In any case, CNA has not adequately briefed the issue and hence must be considered to have abandoned the claim. *See Estiverne v. Louisiana State Bar Ass'n,* 863 F.2d 371, 374 n. 1 (5th Cir. 1989) (citing *United States v. Ballard,* 779 F.2d 287, 295 (5th Cir.), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986)). On remand, the district court therefore should ignore any request from CNA that its lien include attorneys' fees.

**6.** 33 U.S.C. § 933(g)(1) states:

If the person entitled to compensation (or the person's representative) enters into a settlement with a third person ... for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation ... only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or the person's representative)....

**7.** Section 933(f) states:

If the person entitled to compensation institutes proceedings [against a third party] ... the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the secretary determines is payable on account of such injury or death over the net amount recovered against such third person. Such net amount shall be equal to the actual amount recovered less the expenses reasonably incurred by such person in respect to such proceedings (including reasonable attorney's fees).

Thus, for example, if the employee's net from the settlement were $10,000 and the employer's compensation liability determined to be $8,000,

paid benefits. 764 F.2d at 311.[8] However, if the worker settles for less, section 933(g) precludes further liability on the part of the employer unless the employee has obtained the employer's and the carrier's prior approval. *Id.*

Though the lack of findings makes it impossible to tell whether the settlement agreement was for more or less than the amount of compensation to which Villanueva was entitled, there can be but one result in the instant case: SHRM and CNA bear no further liability for compensation benefits. If the settlement was greater than the amount of compensation benefits due, section 933(f) extinguishes SHRM and CNA's liability, and if it was less, section 933(g) precludes his seeking additional benefits. Hence, on remand we instruct the district court to deny Villanueva's cross-claim for additional benefits.

## IV.

Finally, Villanueva contends that the summary judgment must be set aside because his counsel was not present at the summary judgment conference and did not receive notice of that conference until after it had been held. We note, however, that Fed.R.Civ.P. 56 confers upon the parties no right to an oral hearing on summary judgment motions. *See Jones v. Newton*, 775 F.2d 1316, 1318 (5th Cir.1985). The question then becomes whether the proceedings were so unfair as to deny Villanueva his due process rights.

Although we view with some suspicion the district court's termination of this litigation in the presence of defendant's counsel, but not Villanueva's counsel, our review of the record reveals no unfair prejudice to Villanueva, for the simple reason that his counsel failed to lay the groundwork for a defense against the motion, the only notice his counsel claims he did

not receive is the notice pertaining to the conference. There were at least two other notices sent to Villanueva's counsel concerning the summary judgment motion: The motion itself, and the district court's interim order stating that the motion would be decided on the briefs. Yet, he filed no response to the motion and failed to move the district court for reconsideration after its decision in his absence. Hence, given Villanueva's counsel's neglect of the summary judgment motion prior to and after the conference, we have no reason to infer that his absence at the conference unfairly prejudiced his client.

## V.

We hold that the settlement agreement, reduced as it was to writing and signed by Villanueva's counsel, was enforceable under Louisiana law; therefore the summary judgment was properly granted. However, because we also find that, as a matter of law, the employer and the insurance carrier were entitled to a lien on the proceeds of the settlement and are liable for no future compensation benefits, we VACATE the judgment and REMAND to the district court so that it can determine, in a manner consistent with this opinion, the proper amount of that lien and the appropriate distribution of the settlement proceeds.

---

there would be no excess, and thus, no further liability for the employer under this section.

**8.** *See also Petroleum Helicopters, Inc. v. Collier,* 784 F.2d 644, 645–46 (5th Cir.1986). There, we held that because an employer has an interest in protecting statutory right to set-off even when

the employer has waived any subrogation rights against the third-party tortfeasor, a worker's failure to seek employer's and carrier's approval of settlement precludes liability for future compensation benefits despite the existence of such a waiver.